Clifford BROWN, Plaintiff–Appellant,

v.

MASONRY PRODUCTS, INC., Bob Hollingsworth, and Allen Hollingsworth, Defendants–Appellees.

No. 88–8097.

United States Court of Appeals, Eleventh Circuit.

June 7, 1989.

David E. Tuszynski, Nickerson and Tuszynski, P.C., Atlanta, Ga., for plaintiff-appellant.

Kevin B. Buice, Tisinger, Tisinger, Vance & Greer, P.C., Carrollton, Ga., Peter K. Kintz, Lokey and Bowden, Totsy Nichols, Atlanta, Ga., for defendants-appellees.

Before RONEY, Chief Judge, COX, Circuit Judge and MORGAN, Senior Circuit Judge.

RONEY, Chief Judge:

Plaintiff Clifford Brown filed suit in the Northern District of Georgia against his former employer, Masonry Products, Inc., its owner, Bob Hollingsworth, and his son, Allen Hollingsworth, alleging civil rights violations under 42 U.S.C.A. §§ 1981, 1985(3), violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and several state law causes of action. The district court granted the defendants summary judgment on all the federal claims and dismissed the state claims because of lack of pendent jurisdiction. We affirm.

The bulk of the claims arise out of an altercation between Brown and the Hollingsworths on August 1, 1986. From November 1985 until July 25, 1986, Brown had been employed as a laborer at Masonry Products, which manufactures and sells concrete products. Sometime during this eight-month period, sheriff's deputies came to Masonry Products to arrest Brown on a minor criminal charge involving a broken window in the trailer park where Brown

lived at the time. To prevent Brown from going to jail, Bob Hollingsworth agreed to act as surety on Brown's bail bond. Hollingsworth contends that he made it clear to Brown that he would only act as surety as long as Brown remained employed by Masonry. Brown says that no such condition was ever discussed.

Brown came to Masonry on August 1, having not reported to work since July 25, to pick up a check he believed was due him. Hollingsworth told him that he would no longer serve as surety, because he considered Brown to have voluntarily quit his job with Masonry, and that Brown should accompany him to the county jail so Hollingsworth could be removed from the bond. Brown states that he refused to go because he had to report to his new job. Although the parties dispute the precise sequence of events which followed, they do agree that Hollingsworth grabbed Brown's arm, Brown jerked away and Hollingsworth took hold of his arm again. Allen Hollingsworth states that Brown pulled away a second time and prepared to strike his father. Allen Hollingsworth then grabbed Brown from behind, and in the ensuing scuffle, all three fell to the ground and Brown's arm was broken.

Brown was then led to the Hollingsworth truck and Allen Hollingsworth placed a rope around Brown's neck or shoulders. The rope was removed a short time later at the elder Hollingsworth's instruction. Brown contends that en route to the jail Bob Hollingsworth uttered a racial slur, struck him in the head, and threatened him with a hammer.

Brown filed a complaint alleging that the Hollingsworths' actions were undertaken solely because he is black and that they would not have occurred absent racial prejudice.

The Civil Rights Claims

█ Brown argues that the defendants deprived him of his contractual right to collect wages due him from them and, because of his broken arm, deprived him of his right to enforce his contract of employment with his new job in violation of section 1981.[1] He further contends that defendants conspired to deprive him of these rights, as well as his right to be free from physical violence, in violation of section 1985(3).[2]

The United States Supreme Court has made it clear that both sections 1981 and 1985 may reach private conduct. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1974); *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971). *But see United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983) (an alleged conspiracy to infringe First Amendment rights not a violation of section 1985(3) absent a showing of state action). It is equally clear, however, that the civil rights statutes were *not* intended to federalize all of state tort law. *Griffin,* 403 U.S. at 101, 91 S.Ct. at 1797. ("That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others."). Rather, only conduct that is motivated by racial, class-based "invidiously discriminatory animus" gives rise to a civil rights claim. *Id.* at 102, 91 S.Ct. at 1798.

There is no evidence that the actions taken against Brown here were because of

---

1. Section 1981 provides:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

2. Section 1985(3) provides in relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

class-based, racial animus. The physical altercation occurred when Brown refused to accompany Hollingsworth to the jail so that Hollingsworth could be released from the bond. There is no support for Brown's claim that the dispute occurred "solely because he is a black man." *See Hughes v. Ranger Fuel Corp.*, 467 F.2d 6, 9 (4th Cir.1972) (section 1985(3) not intended to allow Congress the right to punish any assault and battery when committed by two or more people within a state); *Croy v. Skinner*, 410 F.Supp. 117, 127 (N.D.Ga. 1976) (isolated racial slur fails to show type of class-based discrimination required to state claim). A spontaneous brawl between men of different races does not alone bring the matter within the confines of the federal statutes alleged here.

The only other instances of alleged racial animus that Brown can cite are two occasions when Bob Hollingsworth allegedly "cussed" at him and a general allegation that Hollingsworth swore at black employees, but never white employees. This evidence standing alone is not sufficient to preclude summary judgment. *See Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 188 (2d Cir.1978) (summary judgment affirmed where plaintiffs merely alleged their belief that termination was racially motivated), *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978).

Fair Labor Standards Act

Brown contends that when he went to Masonry on August 1, 1986, he expected to receive a check for 29.5 hours he worked during the last week of his employment. He did not receive a check because all of it had been applied to a judgment for which his wages at Masonry had been garnished. Masonry had under-withheld from Brown's checks while he was working there based on his assurance that he would take care of the debt. After his employment ceased, Masonry applied his entire last check to the judgment.

■ We have jurisdiction over Brown's claim under the FLSA, even though the amount sought—$99.40—is small. The great weight of authority supports the view that federal district courts, because of their original jurisdiction under 28 U.S.C.A. § 1337 over claims arising under a law regulating commerce, can entertain a FLSA claim under the Act's civil remedy provision, 29 U.S.C.A. § 216(b), regardless of the amount in controversy or diversity of citizenship. *See, e.g., Bledsoe v. Wirtz*, 384 F.2d 767, 769 (10th Cir.1967) ("Jurisdiction in the Federal courts depends solely upon a finding of engagement in interstate commerce and no diversity or jurisdictional amount need be shown."); *Johnson v. Butler Bros.*, 162 F.2d 87, 88 (8th Cir.1947) (cause of action under FLSA "being one which arises under a law regulating commerce, may be enforced in a federal district court, regardless of the amount in controversy or of the citizenship of the parties"); *Consolidated Timber Co. v. Womack*, 132 F.2d 101, 104 (9th Cir.1942) (jurisdiction regardless of amount involved or diversity); *Robertson v. Argus Hosiery Mills*, 121 F.2d 285, 286 (6th Cir.) (because suit arose under law regulating commerce, "the sum or value in controversy is immaterial"), *cert. denied*, 314 U.S. 681, 62 S.Ct. 181, 86 L.Ed. 544 (1941). A plethora of district courts also have decided this issue similarly. *See* 28 U.S.C.A. § 1337 n. 36. *See also Washington v. Miller*, 721 F.2d 797 (11th Cir.1983) (court entertained FLSA minimum wage claims for group of plaintiffs ranging from as little as $40.95 up to $3,131.30 and noted that jurisdiction existed under 28 U.S.C.A. § 1337). *But see Boll v. Federal Reserve Bank of St. Louis*, 365 F.Supp. 637 (1973) ("de minimis" rule applicable for claim seeking payment for 9.5 hours of work), *aff'd*, 497 F.2d 335 (8th Cir.1974); *Crosby v. Oliver Corp.*, 9 F.R.D. 110 (S.D.Ohio 1949) (de minimis rule applicable).

■ We hold that there has been no FLSA violation in this case, however. It is undisputed that Brown's rate of pay was set at $4 per hour, higher than the required minimum wage. During Brown's employment with Masonry, his wages were garnished and the company was required to withhold a portion of Brown's wages. Under the FLSA regulations, however, money paid to a third party for the benefit of the

employee pursuant to a garnishment is treated as equivalent to payment to the employee. Thus, Brown cannot, and does not, complain that Masonry did not pay him the minimum wage throughout his employment, even though a portion of his paycheck was withheld each week.

Brown objects, however, to Masonry's withholding of his entire last paycheck to apply to the garnishment after he quit his job there. But Brown ignores Masonry's assertion that it applied the entire last check to the garnishment because it had under-withheld from Brown's previous checks during his employment based on Brown's promises that he would take care of the debt. Brown had effectively received more than he was entitled to while he held his job with Masonry. The district court correctly rejected Brown's claim that the assessed garnishment lowered the amount he was paid below minimum wage and found that any remedy he was entitled to because of an allegedly improper garnishment was a matter of state law. *See* O.C.G.A. § 18–4–20(d). Masonry did not violate restrictions in the Fair Labor Standards Act and regulations on the amount of wages that may be subject to garnishment. *See* 29 U.S.C.A. §§ 206 and 216(b); 29 C.F.R. 531.27 and 531.39.

Because summary judgment was properly granted for defendants on all federal claims, the district court was within its discretion in dismissing the state claims because of lack of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

AFFIRMED.