Crispin **CALDERON, et al., Plaintiffs,**

v.

Jim **WITVOET, Sr., et al., Defendants.**

No. 88-2384.

United States District Court,
C.D. Illinois,
Danville Division.

May 10, 1991.

Jean Agathen, Vincent H. Beckman, Susan Compernolle, Ill. Migrant Legal Assistance Project, Chicago, Ill., for plaintiffs.

Christopher Bohlen, Blanke Norden Barmann & Bohlen, Kankakee, Ill., for defendants.

## ORDER

BAKER, Chief Judge.

This is an action brought by a group of migrant farm workers against the owners of a Kankakee County, Illinois, farm where those workers performed seasonal agricultural work from 1983 to 1988. The complaint is in four counts. Count One seeks relief under the Migrant And Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801—1872 (1985 & Supp.1991) ("AWPA"). Count Two is a pendent state claim under the Illinois Wage Payment And Collection Act, Ill.Rev.Stat. ch. 48, pars. 39m–1—39m–15 (1986 & Supp.1990) ("IWP-CA"). Count Three alleges violations of the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101—3128 (1989 & Supp. 1991) ("FICA"). Finally, Count Four seeks relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201—219 (1978 & Supp.1991) ("FLSA"). Counts I, II, and III are class actions, while Count IV is brought by the individually named plaintiffs.

The plaintiffs claim that the defendants violated their rights in a variety of ways. Among other things, the plaintiffs claim that the defendants did not keep adequate employment records, did not provide adequate housing for the plaintiffs, did not comply with both federal and state law in withholding certain portions of their hourly paychecks, failed to acquire required insurance coverage on farm equipment, and failed to provide them with required information concerning the terms of their employment. The plaintiffs have moved for partial summary judgment on two of the four counts and for summary judgment on the remaining two counts of their complaint. The defendants have submitted a late response to the plaintiffs' motions, in addition to asserting several affirmative defenses.

### Count One

This count alleges violations of the AWPA. Specifically, the plaintiffs claim that the defendants failed to maintain pay records as required by the statute and violated the posting and transportation requirements of the statute. The defendants have responded to these allegations and have asserted that their status as a family farm exempts them from compliance with the statute.

■ Dealing first with the defendants' affirmative defense, the AWPA exempts family owned and operated farms from its requirements. Such an exemption belongs to

[a]ny individual who engages in a farm labor contracting activity on behalf of a farm ... which is owned or operated exclusively by such individual or an immediate family member of such individual, if such activities are performed only for such operation and exclusively by such individual or an immediate family member ...

29 U.S.C. § 1803(a)(1). "Farm labor contracting activity" is defined as "recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker." *Id.* at § 1802(6). Although few cases have construed this provision, the Sixth Circuit has held that where the evidence demonstrates that a non-family member performed any farm labor contracting activity, the exemption does not apply. *Bueno v. Mattner*, 829 F.2d 1380, 1383–84 (6th Cir.1987); *cf. Alvarez v. Joan of Arc, Inc.*, 658 F.2d 1217, 1221 (7th Cir.1981) (under AWPA's predecessor statute, proof that defendant occasionally solicited workers for non-family farm destroys exemption).

The defendants claim that they fall under this exemption. They argue that the evidence indicates that their farm is owned and operated by family members for the exclusive benefit of the family. They also claim that the evidence indicates that any "farm labor contracting activity" on the farm was performed exclusively by the Witvoets. Thus, the defendants argue that they are exempt from the AWPA's provisions, and they seek a judgment from the court saying so.

The plaintiffs disagree. They claim that the evidence indicates that non-family members regularly drove the plaintiffs to work and that this transportation constituted "farm labor contracting activity" within the meaning of the statute. Thus, the plaintiffs argue that they are entitled to a judgment that the exemption does *not* apply to this case. Failing that, the plaintiffs claim that they have at least proven that there is a factual dispute over whether non-family members engaged in "farm labor contracting activities," which precludes the court from entering judgment for the defendants on the issue of the family farm exemption.

The plaintiffs have the better argument. There is a sharp dispute concerning whether the Witvoets delegated authority to non-family members to hire workers. For example, two of the plaintiffs claim that they first spoke with, and were hired by, non-family members, not the Witvoets. One plaintiff stated that he never spoke with the Witvoets about his hiring, speaking with Jim Witvoet, Jr., for the first time only when there was a problem with his rent. Although the Witvoets may have retained veto power over the workers chosen by the non-family member foremen, that does not translate into a finding that they retained exclusive control over the hiring of workers. *See Marshall v. Buntings' Nurseries*, 459 F.Supp. 92, 97 (D.Md. 1978).[1] The Witvoets' assertion that no one solicited the workers seems improbable; surely *someone* gave them permission to appear for work on the farm. The evidence does not allow the court to make a finding that the Witvoets exclusively performed that function.

The plaintiffs, however, claim even more. They argue that the evidence indicates that they are entitled as a matter of law to a judgment that the family farm exemption *cannot* apply to the defendants. In support, they note that one of the "farm labor contracting activit[ies]" referred to in the statute is the "transporting [of] any migrant or seasonal agricultural worker." 29 U.S.C. § 1802(6). Because the undisputed evidence demonstrates that non-family members at least occasionally drove the workers from their houses to the fields, the plaintiffs claim that the family farm exemption cannot apply to the Witvoets. The defendants respond that such an interpretation would destroy the statutory exemption. They argue that anytime a worker shared a ride to the fields with a fellow

---

**1.** The issue in *Buntings' Nurseries* was whether a foreman had the power to "hire" workers within the meaning of the Farm Labor Contractor Registration Act ("FLCRA"), one of the predecessor statutes to the AWPA. In passing the AWPA, Congress held that, with certain enumerated exceptions, the terms used in the AWPA were to be given the same meanings as the terms were given under the FLCRA. H.R.Rep. No. 97–885,

97th Cong.2d Sess., *reprinted in* 1982 U.S.Code Cong. & Admin.News, 4547, 4554. Under the FLCRA, courts are instructed to accord their "ordinary meaning" to such terms as "recruit," "solicit," "hire," and "transport." 29 C.F.R. § 41.7 (1990). Thus, the construction of the word "hire" in a FLCRA case is highly relevant here.

worker who was not a family member, the exemption would be inapplicable because such car pooling would technically constitute "transporting" of an agricultural worker by a non-family member.

The law and the evidence are on the plaintiffs' side. The Witvoets themselves identified two non-family members who transported workers to the fields in 1987 and 1988, and they indicated that, while they could not remember the drivers' names, that job was performed by non-family members in earlier years as well. Because "the activity of transporting ... includes such transportation of workers to and from the fields, between fields, and into neighboring towns," *Buntings' Nurseries*, 459 F.Supp. at 97, the plaintiffs seem to be entitled to a judgment that the family farm exemption has no application here. The Witvoets' fear that an overly broad reading of "transporting" would destroy the exemption may have validity in certain factual settings. The facts here, however, demonstrate that the "transporting" at issue was more than workers merely sharing rides to the fields; it was the exclusive method employed by the defendants to get their workers to and from their farm.

Turning now to the substantive AWPA claims, the plaintiffs are again on solid ground. As noted earlier, the Witvoets have made a late response to the specific charges made by the plaintiffs, though they place primary reliance on their claim that the family farm exemption obviates the need for them to follow the statute's requirements.

■ As for the plaintiffs' claim that the defendants failed to maintain pay records as mandated by the statute, the evidence appears undisputed that the requirements of the AWPA were not met. 29 U.S.C. § 1821(d)(1) and 29 C.F.R. § 500.80(a) dictate that an agricultural employer must keep records for each worker which state (1) the basis on which wages were paid to that worker, (2) the number of hours worked, (3) the total pay period earnings, (4) specific sums of money withheld and the purpose of such withholdings, (5) the net pay, and (6) the name and permanent address of each worker. In each of the years involved in this lawsuit, the evidence indicates that the defendants failed to comply with one or more of these requirements. Specifically, the evidence is as follows:

1983—The defendants admit that no pay records at all were kept by the defendants.

1984—The defendants admit that their records did not contain the workers' names and addresses, the hours worked, or the basis on which wages were paid.

1985—The evidence shows that the defendants' records did not contain the workers' addresses, the hours worked, the basis on which wages were paid, or the sums withheld from pay and the reason for such withholding.

1986—The evidence shows that the defendants' records did not contain the workers' addresses or the basis on which wages were paid.

1987—The evidence shows that the defendants' records did not contain the workers' addresses or the basis on which wages were paid.

1988—The evidence shows that the defendants' records did not contain a full accounting of the sums withheld or the reasons for such withholding.

■ The defendants' tardy response to this allegation makes three wholly unsupported arguments. First, they claim that the plaintiffs' complaint does not mention the inadequacy of the pay records and, therefore, this charge cannot be maintained. Paragraph Twenty–Two of the amended complaint, however, states this precise allegation. Although the plaintiffs' initial complaint may have omitted the statutory citation, the amended complaint includes it and, in any event, under the notice pleading doctrine, the citation is not even necessary. Second, the defendants argue that because the regulations state that an agricultural employer need only keep pay records for three years, the plaintiffs cannot maintain an action for inadequate records in years 1983 and 1984. But the defendants themselves admitted that the records were inadequate for those years.

The fact that a defendant may freely dispose of pay records after three years may make it difficult for a plaintiff to prove the records' inadequacy, but, here, the plaintiffs have overcome that difficulty. Third, the defendants baldly state that the records they kept were adequate. They do not, however, point to any evidence to prove this assertion. In fact, the evidence overwhelmingly indicates that the records were inadequate from 1983 through 1988 as a matter of law.

■ As for the plaintiffs' claim that the defendants failed to comply with the AWPA's transportation requirements, the evidence similarly appears undisputed. 29 U.S.C. § 1841(b)(1)(C) requires that agricultural employers

> have an insurance policy or a liability bond that is in effect which insures the agricultural employer ... against liability for damages to persons or property arising from the ownership [or] operation ... of any vehicle used to transport any migrant or seasonal agricultural worker.

Here, the defendants admit transporting the plaintiffs to and from the fields each day in vehicles owned by the defendants. They also admit that they did not have insurance or a liability bond on those vehicles for any of the years involved in the case.

The defendants claim that their sincere religious beliefs prevent them from acquiring insurance or from posting a liability bond. Although it is doubtful that such a Free Exercise Clause argument would prevail even under traditional First Amendment jurisprudence, the argument is certainly precluded under the Supreme Court's recent reworking of that traditional framework. In *Employment Division v. Smith*, —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Court repudiated its former balancing approach to free exercise challenges and instead held that the "free exercise of religion does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* 110 S.Ct. at 1600 (cita-

tions omitted). That holding disposes of the defendants' First Amendment defense.

■ As for the plaintiffs' claim that the defendants failed to comply with the AWPA's posting requirement, the evidence again appears undisputed. 29 U.S.C. § 1821(b) requires that all agricultural employers post, in a conspicuous place, a poster provided by the United States Department of Agriculture which sets out farm workers' rights under the AWPA. Here, the defendants have admitted that they did not post such a sign in the years 1983, 1984, 1985, and 1986. The defendants nevertheless claim that the plaintiffs are not entitled to summary judgment on this issue because they have failed to show that the defendants received such a poster from the Secretary of Agriculture. Yet there is no indication in the statute, in the regulations promulgated under it, or in any case interpreting it, that an agricultural employer is excused from compliance if the Secretary neglects to mail the poster to the employer. The plaintiffs demonstrated that the defendants were required to post the sign and that the defendants failed to do so. They have met their burden.

### Count Two

■ This state pendent count alleges violations of the IWPCA. Specifically, the plaintiffs claim that the defendants failed to secure their written consent before making deductions from their hourly pay as required by the statute. The defendants have submitted a late response to this allegation.

Ill.Rev.Stat. ch. 48, par. 39m–9 states in pertinent part: "[D]eductions by employers from wages ... are prohibited unless such deductions are ... to the benefit of the employee; or ... made with the express written consent of the employee, given freely at the time the deduction is made." Here, the Witvoets admit that they neither requested nor received the written consent of any of the plaintiffs before deducting pay from their paychecks. Instead, they assert that because the withholding was "to the benefit" of the plaintiffs, they have complied with the statute. Yet the defen-

dants do not point to any undisputed evidence that the withheld money benefitted the workers. Indeed, the evidence demonstrates the opposite.

### Count Three [2]

■ This count alleges violations of the FICA. Specifically, the plaintiffs claim that the defendants failed to comply with certain income reporting and withholding requirements, which, the plaintiffs claim, may prevent them from collecting the proper amount of benefits when they retire or become disabled. The plaintiffs did not originally move for summary judgment on this count. The defendants, however, have asserted an affirmative defense to the count. The defendants claim that, because the plaintiffs are foreign workers, the FICA exempts the defendants from having to comply with all the requirements of the statute. In response to this defense, the plaintiffs moved for summary judgment, claiming that the evidence indicates that the defendants are not entitled to this statutory exemption as a matter of law and that the undisputed evidence indicates that they are entitled to summary judgment on the FICA issue.

26 U.S.C. § 3121(b)(1) exempts from FICA's definition of employment

> service performed by foreign agricultural workers lawfully admitted to the United States from ... [a] foreign country or possession thereof, on a temporary basis to perform agricultural labor.

Presumably, the defendants intend to prove at trial that the plaintiffs fall into this exception. Thus, according to the defendants, any FICA violations proven by the plaintiffs would have no legal effect. For their part, the plaintiffs have moved for partial summary judgment on this defense. They seek an order from the court declaring as a matter of law that the exception does not apply.

Yet again, the plaintiffs prevail. The only foreign agricultural workers lawfully admitted to this country to perform agricultural work on a temporary basis—and, thus, the only workers to whom the exception applies—are those admitted pursuant to a highly regulated program known as H–2A or H–2.[3] *Moorhead v. United States*, 774 F.2d 936, 941–42 (9th Cir.1985) (holding that the § 3121(b) exemption only applied to H–2 workers); *see* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) & 1188 (the H–2A program). The Supreme Court has held that "[b]efore an alien can be classified as a nonimmigrant under [the H–2 program,] his prospective employer must submit a petition on his behalf" to the United States Department of Labor. *Saxbe v. Bustos*, 419 U.S. 65, 71, 95 S.Ct. 272, 277, 42 L.Ed.2d 231 (1974). Without such a petition from an employer, the complex process necessary to qualify under the program cannot begin and the exemption cannot apply.

Here, the Witvoets admit that they have never filed an application for temporary foreign workers. Instead, they urge the court not to follow *Moorhead*, but to hold that the § 3121(b) exemption applies more broadly and encompasses more workers than just those in the H–2A program. The defendants cite no authority for this reading, however, and their interpretation seems to expand the exemption beyond reason. The Ninth Circuit got it right: Congress intended the exemption to be narrow and to encompass settled Immigration & Nationality Act law and regulations.[4]

---

**2.** The defendants initially claim that the FICA statute does not contain any provisions for private party enforcement. They state that only the IRS can bring an action against an employer for noncompliance with the withholding provisions. Several courts, however, have granted farmworker plaintiffs relief directly under the FICA. *See, e.g., Colunga v. Young*, 722 F.Supp. 1479, 1487 (W.D.Mich.1989), *aff'd*, 914 F.2d 255 (6th Cir.1990); *Strong v. Williams*, 89 Lab.Cas. (CCH) par. 33,929 (M.D.Fla.1984). Thus, even under the strict *Cort v. Ash* guidelines, 422 U.S.

66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the plaintiffs have a cause of action.

**3.** Prior to 1986, the program was known as the H–2 program. After the passage of the Immigration Reform & Control Act of 1986, it was known as the H–2A program. There is no substantive difference in the programs.

**4.** The defendants have made a motion to compel based on their interpretation of the § 3121(b) exemption. Specifically, they want

As for the FICA issue itself, the evidence is uncontroverted that, until 1988, the defendants failed to deduct or remit FICA taxes on the wages earned by the plaintiffs. Thus, summary judgment is appropriate.

### Count Four

This count alleges violations of the FLSA. Specifically, the plaintiffs claim that the defendants withheld a portion of their hourly pay, which had the effect of reducing their pay to below the federally mandated minimum wage. The defendants have filed a late response to this allegation and have asserted a defense based on the statute of limitations, though they have made no motion regarding that defense.

From 1983 through 1988, the defendants paid the plaintiffs on an hourly basis. The plaintiffs were paid $3.25 per hour from 1983 through 1985 and $3.35 per hour in 1986 and 1987. In each of these years, the defendants also withheld a portion of the plaintiffs' hourly pay. The amount withheld was $.50 per hour from 1983 through 1985, and $.25 per hour in 1986 and 1987. Thus, with the amount withheld excluded, the plaintiffs were paid a total of $2.75 per hour from 1983 through 1985 and $3.10 per hour in 1986 and 1987. In each of these years, the mandated minimum wage was $3.35 per hour. The plaintiffs claim that the defendants' failure to pay them the minimum wage constitutes a violation of FLSA.[5]

■ Regulations promulgated by the Secretary of the United States Department of Labor state that "[w]hether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35 (1990). Courts have held that employers may not make deductions from a worker's pay if such deductions bring the pay below the federal minimum wage. *See, e.g., Brennan v. Heard,* 491 F.2d 1, 4 (5th Cir.1974); *compare Brown v. Masonry Products, Inc.,* 874 F.2d 1476, 1478–79 (11th Cir.1989) (no FLSA violation where withholding did not bring employee's pay below minimum wage). Even if eventually paid to the employee, money withheld during the course of the employee's employment cannot count towards the employer's FLSA obligations. *See Dunlop v. Gray–Goto, Inc.,* 528 F.2d 792, 795 (10th Cir.1976); *cf. Olson v. Superior Pontiac–GMC, Inc.,* 765 F.2d 1570, 1578–79 (11th Cir.1985) (the employee must actually receive the minimum wage each and every pay period). This rule applies with equal force to bonuses—money withheld by the employer during the course of employment which is to be paid to the employee at the end of his or her service—if the withheld money brings the employee's regular pay below the minimum wage. *Martinez v. Deaf Smith County Grain Processors, Inc.,* 583 F.Supp. 1200, 1208 n. 2 (N.D.Tex.1984).

■ Here, there is no dispute that the defendants withheld money from the plaintiffs' hourly pay which brought the plaintiffs' hourly pay below the minimum wage.

---

the plaintiffs to answer questions concerning their immigration status so that the defendants can prove that the plaintiffs are "foreign agricultural workers." Because the court holds that only H–2A workers are "foreign agricultural workers" within the meaning of the statute, however, the immigration status of the workers is irrelevant given the rest of the evidence. It is undisputed that the defendants did not take the necessary steps to qualify its workers under the program. Revealing the status of the workers cannot put that in dispute or prove that, in fact, the defendants did take the required steps to begin the qualification process. The motion to compel is denied.

**5.** The defendants generally referred to this withheld money as a "savings" which the worker recovered at the end of the season. The plaintiffs, however, referred to the money as a "bonus" which was paid to them only if they stayed the entire season. There is a factual dispute concerning whether each member of the plaintiff class eventually recovered his or her withheld pay. However, the plaintiffs claim—and the court agrees—that whether the withheld money was eventually recovered by the plaintiffs is irrelevant for purposes of establishing a FLSA violation. As noted below, the federal minimum wage of $3.35 per hour must be paid to the employee free and clear, without conditions. If conditions are placed on the payment of the money, a violation has occurred.

Although some of the plaintiffs may have eventually recovered their money, that does not affect the illegality of the withholding itself. The defendants claim that at least some of the plaintiffs agreed to the withholding and that it was for the benefit of the plaintiffs, but they point to no proof of this. They also claim that the value of the housing they provided the plaintiffs may be included in determining whether they met their FLSA obligation. Although that is true, the defendants must demonstrate, at a minimum, that the housing they provided was adequate and that the money which was withheld bore a reasonable relationship to the quality of housing provided. *See* 29 C.F.R. § 531.3 (1990); *Osias v. Marc*, 700 F.Supp. 842, 845 (D.Md.1988). The defendants have not even attempted to prove either point. Moreover, the defendants themselves claim that the money was withheld as a savings to be paid back to the plaintiffs, not as payment for housing. The evidence shows that the amount of money the plaintiffs were paid "free and clear" during the course of their employment was below the minimum wage.

### *Motion To Strike Defendants' Demand For Jury Trial*

The defendants have demanded a jury trial. The plaintiffs have moved to strike that demand, arguing that the relief requested in each of the complaint's four counts is equitable in nature and not otherwise within the jury's purview.[6] Once again, the defendants responded late to this motion.

■■■ The plaintiffs seek to strike the demand for a jury trial under Count One of the complaint for two reasons. First, they claim that because the relief sought is primarily equitable, a jury trial is unavailable. Second, because a court is to take into account efforts to settle the dispute when it fixes damages under the AWPA and because, under the Federal Rules of Evidence, a jury may not hear evidence of such settlement attempts, a jury trial is

unavailable. The defendants respond only to the first claim, arguing that the statutory damages sought under the AWPA are legal in nature, though they cite no law in support.

Statutes which afford primarily equitable relief, even if also allowing for some kind of monetary damages, need not provide the defendants with a jury trial. *See Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). Here, the AWPA states:

> If the court finds that the respondent has intentionally violated any provision of this [Act] or any regulation under this [Act], it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, *or other equitable relief . . . .* [I]f such complaint is certified as a class action, the court shall award no more than the lesser of $500 per plaintiff per violation, or up to $500,000, *or other equitable relief.*

29 U.S.C. § 1854(c)(1) (emphasis added). Like Title VII, the AWPA is a remedial statute that allows the court to shape a remedy which may or may not include backpay or other money damages. In construing the AWPA's predecessor statute—which included the same statutory damages language—at least one court has held that the relief afforded is primarily equitable, precluding a jury trial. *See, e.g., Cantu v. Owatonna Canning Co., Inc.*, 90 Lab.Cas. (CCH) par. 33,967, 1980 WL 2173 (D.Minn.1980); *see also Guerrero v. Garza*, 464 F.Supp. 509, 509–10 (W.D.Wis. 1978) (no jury trial available if plaintiff seeks only statutory damages, as opposed to actual damages). Here, the plaintiffs seek only statutory damages, which are equitable in nature.

The AWPA also states that "[i]n determining the amount of damages to be awarded, ... the court is authorized to consider whether an attempt was made to resolve the issues in dispute before resort

---

**6.** Because the court grants the plaintiffs' motion for summary judgment on Counts II and III of the complaint, there is no need to address the

issue of the availability of a jury trial under the IWPCA or the FICA.

to litigation." 29 U.S.C. § 1854(c)(2). This provision, of course, collides directly with the rule that juries are not to consider evidence of settlement attempts when fixing damages. Fed.R.Evid. 408. Again, at least one court has held that this inconsistency constitutes proof that Congress did not intend to provide a jury trial under the AWPA. *See, e.g., Hampton v. Barefoot,* 101 Lab.Cas. (CCH) par. 34,562, 1984 WL 3163 (E.D.N.C.1984).

■ As for Count Four of the complaint, the plaintiffs seek to strike the demand for a jury as to the issue of liquidated damages. Under the FLSA, an employer who violates the minimum wage provisions must pay to the affected employees their actual damages—here, the unpaid minimum wage—as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Portal–To–Portal Pay Act allows an employer to reduce the amount of liquidated damages he or she must pay under the FLSA by showing "to the satisfaction of the court that the act or omission giving rise to [the FLSA violation] was in good faith and ... [based upon] reasonable grounds for believing that his [or her] act or omission was not a violation of [the FLSA.]" 29 U.S.C. § 260. Here, the court grants summary judgment to the plaintiffs regarding their substantive FLSA claims. The plaintiffs argue that the remaining issue of the liquidated damages due to the FLSA violations can only be determined by the court as a matter of equity and discretion. The defendants argue that liquidated damages are a legal remedy.

The plaintiffs are correct. When an employee sues an employer under the FLSA for both back wages and liquidated damages, the issue of the back wages must go to a jury, while, because the award of liquidated damages lies within the discretion of the district court, no jury trial is available on that issue. *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1063 (2nd Cir. 1988); *accord McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir.1971); *see also Hampton v. Barefoot,* 101 Lab.Cas. par. 34,562 (E.D.N.C.1984) (court held that the

issue of actual damages would be tried to a jury and the issue of liquidated damages would be determined by the court). The statutory scheme is simple: the jury determines the amount of lost wages—or, as in this case, the court enters summary judgment on the issue—and then the court, in its discretion, determines whether to award liquidated damages, with the amount of the lost wages award serving as a ceiling. *See Superior Care,* 840 F.2d at 1063.

The defendants argue that *McLaughlin v. Owens Plastering Co.,* 841 F.2d 299 (9th Cir.1988), holds something different. It does not. In *McLaughlin,* the Secretary of Labor brought suit under the provisions of the FLSA which allow the Secretary to seek injunctive relief. *See* 29 U.S.C. § 217. The Ninth Circuit held that if the Secretary also sought liquidated damages under § 216, a jury must fix the amount of lost wages which sets the ceiling on any liquidated damages award. *McLaughlin,* 841 F.2d at 300–01. Noting that the employer would have the right to have a jury determine the amount of lost wages if it was the aggrieved employee who brought suit, courts have held that when it is the Secretary who brings suit under § 217 and § 216, the employer retains the right to have a jury determine the amount of actual damages, and, thus, to limit the amount of liquidated damages the court may award. *E.g., Dole v. Scott–Rice of Texas, Inc.,* 731 F.Supp. 776, 777 (N.D.Tex.1990); *Donovan v. Motel 6,* 102 Lab.Cas. (CCH) par. 34605, 1984 WL 3183 (M.D.N.C.1984).

Here, the plaintiffs' motion seeks to clarify that the issue of any liquidated damages must be determined by the court. The clear weight of authority holds that the plaintiffs are correct.

### Motion for Sanctions

Finally, the defendants have moved for sanctions against the plaintiffs for delaying discovery. The court denies the defendants' motion. Indeed, as the court noted at the recent hearing in this matter and as the court has noted in its previous orders, if any party deserves to be sanctioned in this case, it is the defendants. *See* Order

of December 20, 1989. The defendants' conduct during discovery and their inability to observe court ordered deadlines have provided the court with ample reason to impose sanctions, a course of action the court may yet take.

In sum, the court holds that the plaintiffs are entitled to summary judgment on Counts II and III of the complaint and partial summary judgment on Counts I and IV of the complaint.

IT IS THEREFORE ORDERED that the plaintiffs' motions for summary judgment and for partial summary judgment (# 42, 50, 52, and 70) are granted.

IT IS FURTHER ORDERED that the plaintiffs' motion to strike the defendants' jury demand (# 41) is granted.

IT IS FURTHER ORDERED that the defendants' motions for partial summary judgment (# 46 & 57) are denied.

IT IS FURTHER ORDERED that the defendants' motion for sanctions (# 43) and motion to compel discovery (# 58) are denied.

IT IS FURTHER ORDERED that the defendants' motion to amend their answer by adding affirmative defenses (# 59) is granted.

IT IS FURTHER ORDERED that the case is set for final pretrial conference on June 25, 1991, at 1:30 p.m. before the court sitting in Danville.